# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DAVID WESTON,

                    Plaintiff,

v.                                                      Case No. 24-CV-385-JPS

EMILIE AMUNDSUN, JOHN JANSEN,
RON ROGERS, BROCK ROBERTS,                              **ORDER**
PAMELA CONDOS, MICHELLE
LANG, ALESHA BRERETON, EMILY
GILBERT, ALICIA SHANNON, THE
WISCONSIN DEPARTMENT OF
CHILDREN AND FAMILIES, THE
KENOSHA COUNTY DIVISION OF
CHILDREN AND FAMILY SERVICES,
THE COUNTY AND THEREIN THE
CITY OF KENOSHA, and THE STATE
OF WISCONSIN,

                    Defendants.

## 1.      PROCEDURAL HISTORY

In March 2024, Plaintiff David Weston ("Plaintiff"), proceeding pro se, filed this action, together with a motion for leave to proceed in forma pauperis. ECF Nos. 1, 3. In April 2024, the Court screened Plaintiff's complaint and identified four "significant pleading and jurisdictional deficiencies." ECF No. 8 at 2.

First, Plaintiff's 127-page complaint, which was "unduly long, rambling, repetitive, and difficult to parse," ran afoul of Federal Rule of Civil Procedure 8. *Id.* at 5. Second, Plaintiff attempted to proceed pro se on behalf of his minor biological and stepchildren, which is not permitted

under the Federal Rules or this Circuit's case law. *Id.* at 1, 6 (citing Fed. R. Civ. P. 17(c) and *E.T. by Thames v. Milwaukee Police Dep't*, No. 20-CV-170-PP, 2021 WL 1610103, at *3 (E.D. Wis. Apr. 26, 2021)). Third and fourth, the Court viewed Plaintiff's complaint, which sought to relitigate decisions from state court Child in Need of Protection and/or Services ("CHIPS")[1] proceedings and reunite Plaintiff with his biological child and stepchild, as jurisdictionally barred under either the *Younger v. Harris*, 401 U.S. 37 (1971) doctrine or the *Rooker-Feldman* doctrine,[2] as well as the domestic-relations exception to federal jurisdiction. *Id.* at 4–7.

The Court granted Plaintiff leave to amend the complaint to attempt to correct these shortcomings, noting that "[i]f an amended complaint is received, it will become the operative complaint . . . and the Court will screen it in accordance with 28 U.S.C. § 1915." *Id.* at 2, 8. At that time, the Court deferred ruling on Plaintiff's motion for leave to proceed in forma pauperis pending the filing of an amended complaint. *Id.* at 2.

Now before the Court is Plaintiff's amended complaint. ECF No. 9. The Court will proceed to address Plaintiff's motion for leave to proceed in forma pauperis and screen Plaintiff's amended complaint.

## 2. MOTION TO PROCEED IN FORMA PAUPERIS

A party proceeding pro se may submit a request to proceed without prepaying the filing fees, otherwise known as a motion to proceed in forma

---

[1]"When children come to court because a parent has hurt them or not taken care of them, this is a CHIPS case. This stands [f]or 'Child in Need of Protection and/or Services.'" What is CHIPS?, available at https://perma.cc/H84S-9WZ5 (last visited June 5, 2024).

[2]*See Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

pauperis. "The federal in forma pauperis statute, 28 U.S.C. § 1915,[3] is designed to ensure [that] indigent litigants have meaningful access to the federal courts while at the same time prevent indigent litigants from filing frivolous, malicious, or repetitive lawsuits." *Rodriguez v. Crim. Just. Facility Safety Bldg.*, No. 23-CV-394, 2023 WL 3467565, at *1 (E.D. Wis. Apr. 7, 2023) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)), *report and recommendation adopted sub nom. Rodriguez v. Crim. Just. Facility*, No. 23-CV-394-PP, 2023 WL 3467507 (E.D. Wis. May 15, 2023).

To determine whether it may authorize a litigant to proceed in forma pauperis, the Court engages in a two-part inquiry. It must examine whether the litigant is able to pay the costs of commencing the action. 28 U.S.C. § 1915(a). The Court must also examine whether the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief"; if any of these criteria applies, the Court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Likewise, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

It follows that a litigant whose complaint does not clear the § 1915(e)(2) threshold or does not plead claims within the Court's subject matter jurisdiction, and whose case cannot proceed as a result, necessarily

---

[3] Although 28 U.S.C. § 1915(a) specifically references "prisoner" litigants, it has been interpreted as providing authority for such requests by both prisoner and non-prisoner pro se litigants alike. *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir. 1997) (superseded by rule on other, inapplicable grounds); *see also Mitchell v. Farcass*, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) ("Section 1915(e) applies to all [in forma pauperis] litigants—prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.") (Lay, J., concurring).

cannot reap the benefits of proceeding in forma pauperis. In other words, although in forma pauperis status ought to be granted to those impoverished litigants "who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972), a pro se litigant's financial status is only part of the picture in determining whether the litigant's case may proceed without payment of the filing fee.

Because the Court concludes *infra* Section 3.3 that Plaintiff pleads claims within the Court's subject matter jurisdiction, the Court proceeds to address the merits of his motion for leave to proceed in forma pauperis. Plaintiff avers that he is unemployed and unmarried and that he supports one minor daughter. ECF No. 3 at 1. He earns approximately $1,400 per month performing handyman services, and he receives approximately $350 per month in food share benefits. *Id.* at 2. His monthly expenses total approximately $2,600. *Id.* at 2–3. He owns his car, which he estimates is worth approximately $500. *Id.* at 3. He has a cash or checking, savings, or other similar account with a total balance of $150. *Id.* Based on this information, the Court is satisfied that Plaintiff is indigent, and it will accordingly grant his motion for leave to proceed in forma pauperis.

### 3. PLAINTIFF'S AMENDED COMPLAINT

#### 3.1 Legal Standard

As the Court explained in its initial screening order, when a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on defendants. The Court "shall dismiss the case" if it finds any of the following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from

such relief, 28 U.S.C. § 1915(e)(2); or the case is outside of the Court's subject matter jurisdiction, Fed. R. Civ. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke*, 490 U.S. at 325); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting *Neitzke*, 490 U.S. at 325). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Ashcroft*, 556 U.S. at 678)

(internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### 3.2 Facts Pleaded in the Amended Complaint

In his amended complaint, Plaintiff names as defendants Emilie Amundsun ("Amundsun"), John Jansen ("Jansen"), Ron Rogers ("Rogers"), Brock Roberts ("Roberts"), Pamela Condos ("Condos"), Michelle Lang ("Lang"), Alesha Brereton ("Brereton"), Emily Gilbert ("Gilbert"), Alicia Shannon ("Shannon"), the Wisconsin Department of Children and Families ("DCF"), the Kenosha County Division of Children and Family Services ("KCDCFS"), the County and therein the City of Kenosha ("Kenosha County and City"), and the State of Wisconsin (the "State"). ECF No. 9 at 1–7. Amundsun is the State Secretary of Affairs at DCF. *Id.* at 2. Jansen is the Director of Affairs at DCF. *Id.* Rogers is the Director of Affairs at KCDCFS. *Id.* at 3. Roberts, Condos, Lang, Brereton, Gilbert, and Shannon are Caseworker Supervisors at KCDCFS. *Id.* at 3–5.[4]

Plaintiff pleads the following facts. On January 15, 2022, Plaintiff's biological child, T.W., was alleged to be drug positive at birth. *Id.* at 8. T.W.'s condition was reported to KCDCFS. *Id.* at 8–9. Shannon and Gilbert, under the supervision of Rogers, initiated a case with the "primary goal of retaliating against" Plaintiff's wife, E.W. *Id.* at 9. Plaintiff contends that he is a pawn in this scheme and is and has always been innocent of child

---

[4]Plaintiff, at times, conflates Roberts and Rogers. The Court refers to Rogers when Plaintiff describes a supervisory role and Roberts when Plaintiff describes a case supervisor role.

neglect. *Id.* Nonetheless, he has "received no individualized assessment of his ability to parent T.W. and enjoyed no due process protections under Federal and State law prior to having T.W. removed from his care." *Id.*

On January 19, 2022, Shannon, Gilbert, and Brock conspired to "obtain[] a Protective Order to remove T.W. from her parent[s'] care." *Id.* at 10. Five days later, Shannon filed an emergency ex parte removal request, which the Kenosha County Family Court granted "despite the irregularities and lack of probable cause with respect[] to the father's rights." *Id.* at 10–11. On February 2, 2022, Shannon and Gilbert performed an emergency pick-up of T.W. from the hospital. *Id.* at 11. They informed E.W. that a hearing would take place the next day. *Id.* They did not inform Plaintiff, who learned of the hearing from E.W. and attended the hearing. *Id.* At the hearing, Plaintiff was not named as a respondent to any allegations of neglect. *Id.* at 12. However, he was not permitted to participate at the hearing, and a protective order was issued against E.W. *Id.* T.W. was placed in foster care. *Id.* The court ordered KCDCFS to consider Plaintiff as a relative placement resource, but KCDCFS made no "reasonable efforts" to comply in the six months prior to the dispositional phase of the proceedings. *Id.*

Plaintiff was not named as a respondent at two subsequent hearings, but he did appear at one of them as "a petitioner to the allegations against E.W." *Id.* at 12–13. Thereafter, in April 2022, the State added Plaintiff's name to a permanency plan, "but afforded him no trial for dispute, therefore never adjudicating him for neglect against T.W. under a protective custody order." *Id.* at 13. As a result, Plaintiff alleges that the case disposition order that followed "is also null and void for lack of due process." *Id.*

In the interim, Brereton falsely alleged that Plaintiff failed to maintain a suitable residence or care for T.W. due to homelessness. *Id.* Plaintiff contends that this is demonstrably false because the Child Support Administration had sent notices to his home address. *Id.* at 13–14. Plaintiff denied Brereton's allegation and requested a jury trial, for which he was appointed an attorney. *Id.* at 14. However, he did not receive any notices of the date and time of the hearings related to the jury trial, causing him to miss a status hearing and have a finding of default entered against him. *Id.* His attorney appeared at the status hearing but requested to withdraw; Plaintiff was not given procedural warnings regarding proceeding without an attorney and was "provided no opportunity to" find a new attorney. *Id.* Plaintiff filed objections and motions to vacate and/or modify the placement orders with the court, but the court denied these requests, reasoning that Plaintiff should have known about his wife's drug use during pregnancy. *Id.* at 14–15. Plaintiff challenges the state court's findings in the resulting dispositional order, which indicate that the state court never found him to be unfit to parent. *Id.* at 15.

Since these proceedings took place, Plaintiff has filed further placement motions, which have been denied. *Id.* at 16. He has also contacted Jansen and Amundsun through the DCF grievance procedure with complaints against Brereton based on her discriminatory use of his "homelessness prior to T.W.'s birth" in the state proceedings, and he has contacted Condos, Lang, and Roberts through the KCDCFS grievance procedure, who all treated him with deliberate indifference. *Id.* at 16, 19. The DCF investigated Plaintiff's complaints, but it did not allow him the opportunity to participate in the grievance procedure or to dispute responses given by Rogers with respect to Plaintiff's complaints, nor did it

afford Plaintiff "any reasonable ability for an appeal." *Id.* at 16. Brereton, under the authority of "supervisory officials," retaliated against Plaintiff for his complaints of discrimination by (1) submitting an altered and false permanency plan, which had a "substantial influence" in prolonging Plaintiff's separation from T.W., (2) requesting more restrictive conditions for Plaintiff, and (3) submitting the results of an investigation into evidence with the court. *Id.* at 16–17. Plaintiff brought these issues to the court's attention, but he was afforded no notice. *Id.* Condos, Lang, and Roberts have also since knowingly allowed falsified documents to be submitted to the court, which were based on Brereton's recommendations. *Id.* at 25.

Plaintiff pursues constitutional claims under the First, Fourth, Thirteenth, and Fourteenth Amendments. *Id.* at 19. He pursues claims against Amundsun and Jansen related to their handling of his grievances through the DCF grievance procedure. *Id.* at 19, 22. He pursues claims against Condos, Lang, and Roberts, as well as their supervisor, Rogers, related to the KCDCFS grievance procedure and for allowing and approving constitutional violations to occur by KCDCFS employees. *Id.* at 19–20, 22. He pursues claims against Shannon, Gilbert, and Brereton, as well as their supervisor, Rogers, for initiating the state court legal proceedings described above, as well as for their conduct throughout those proceedings, including submission of allegedly false evidence to the court. *Id.* at 20–21, 22. He pursues a theory of liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) against DCF related to its administration of an insufficient grievance procedure. *Id.* at 21–22. He also pursues a *Monell* theory of liability against KCDCFS, ostensibly for maintaining a policy of permitting constitutional violations to occur and for also maintaining an insufficient grievance procedure. *Id.* at 6, 22. It appears

that he attempts to pursue a *Monell* theory of liability related to KCDCFS's actions or inactions against Kenosha County and City as well. *Id.* at 3–5. Finally, he pursues a claim against the State under Title VI of the Civil Rights Act of 1871 and 1964, 42 U.S.C. § 2000d ("Title VI"). *Id.* at 6.

As relief, Plaintiff seeks, among other things, a declaratory judgment that the state courts' protective, placement, and dispositional orders are void, an injunction preventing further retaliatory actions, and compensatory and punitive damages. *Id.* at 27–28.

### 3.3    Analysis[5]

Plaintiff's amended complaint resolves the Court's first two concerns as set forth in its screening order. His pleading no longer runs afoul of Rule 8, and Plaintiff has removed his minor biological child and stepchild as plaintiffs. Plaintiff has also partially ameliorated the Court's concerns regarding the applicability of the *Younger* or *Rooker-Feldman* doctrines, as well as the domestic-relations exception to federal jurisdiction.

The Court first addresses the applicability of *Younger* or *Rooker-Feldman* to Plaintiff's claims against the KCDCFS Defendants, as Plaintiff's claims against these defendants largely relate to his desired relief of voiding the underlying (and perhaps ongoing) state court protective, placement, and dispositional orders and proceedings. It does not appear that the (ostensibly confidential) state court proceedings that Plaintiff describes are publicly available on the Wisconsin Circuit Court Access website. The

---

[5] The Court will collectively refer to Defendants Amundsun, Jansen, and DCF as the "DCF Defendants," and Defendants Rogers, Roberts, Condos, Lang, Brereton, Gilbert, Shannon, KCDCFS, and Kenosha County and City as the "KCDCFS Defendants."

Court has located a child support case naming Plaintiff and E.W.,[6] but neither a search of Plaintiff's nor E.W.'s names has turned up any other relevant proceedings. Based on this, together with Plaintiff's allegations in the amended complaint, the Court is unable to glean exactly at what point, or whether, Plaintiff even became a party in the underlying CHIPS or child placement proceedings. The *Younger* and *Rooker-Feldman* abstention doctrines "extend only to parties to ongoing state court litigation while specifically leaving non-parties free to pursue their claims." *Allen v. Allen*, 48 F.3d 259, 261 (7th Cir. 1995) (citing *Leaf v. Sup. Ct. of Wis.*, 979 F.2d 589, 598 (7th Cir. 1992) and *Lynk v. LaPorte Sup. Ct. No. 2*, 789 F.2d 554 (7th Cir. 1986)). Thus, if Plaintiff was never a named party in the state cases, or if he was only named in April 2022 with the permanency plan (after which he claims to have requested a jury trial), these doctrines may not apply or have only limited application.

Nonetheless, "the difficulty in applying *Younger* or *Rooker–Feldman* abstention does not mean that [Plaintiff's] suit is properly before this Court." *Id.* As in *Allen*, "[m]uch of [Plaintiff's] complaint, particularly his request for relief in the form of a declaration that [the protective, placement, and dispositional orders of the state court are void], challenges the underlying [protective, placement, and dispositional orders]." *Id.* "The domestic relations exception to federal jurisdiction prevents the district court from hearing such a claim." *Id.* (citing *Ankenbrandt v. Richards*, 504 U.S. 689 (1992) and *Alpern v. Lieb*, 38 F.3d 933 (7th Cir. 1994)). In fact, courts

---

[6] *See In re: the Support or Maintenance of T.K.W.*, Kenosha Cnty. Case No. 2022FA000221, *available at* https://wcca.wicourts.gov/caseDetail.html?caseNo=2022FA000221&countyNo=30&index=0 (naming Plaintiff and Elizabeth Weston as parties) (last visited June 5, 2024).

analyzing similar allegations to Plaintiff's have held that they lack subject matter jurisdiction over the associated claims due to the domestic-relations exception. *See, e.g., Bowersock v. Matherly*, No. 23-1368-JES, 2023 WL 6847548, at *6 (C.D. Ill. Oct. 17, 2023) (dismissing case for lack of jurisdiction where desired relief was return of children from foster placement after allegedly false allegations of abuse and seizure because "the Court is barred from providing Plaintiff's requested relief due to the domestic-relations exception") (citing *Mannix v. Machnik*, VMK-05-7232, 2006 WL 566447, at *2 (N.D. Ill. Mar. 3, 2006)); *Gmeiner v. Wienke*, No. 22-C-1247, 2022 WL 14637242, at *1 (E.D. Wis. Oct. 25, 2022) (same).

However, the issue is not clear cut, particularly because Plaintiff's desired relief is not limited to voiding the state court orders. The Seventh Circuit has analyzed claims like Plaintiff's without raising the domestic-relations exception. *See, e.g., Milchtein v. Milwaukee County*, 42 F.4th 814 (7th Cir. 2022); *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463 (7th Cir. 2011); *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003). Thus, the Court does not find it prudent to dismiss these claims at the screening stage on the basis of the domestic-relations exception without a response from the KCDCFS Defendants regarding Plaintiff's allegations as well as the applicability of the domestic-relations exception. The KCDCFS Defendants may also be able to shed light on whether Plaintiff was a party to the underlying state court proceedings, thus implicating the *Younger* or *Rooker-Feldman* abstention doctrines. Therefore, at this juncture, Plaintiff may proceed on certain claims against the KCDCFS Defendants.

First, Plaintiff may proceed on both substantive and procedural due process claims under the Fourteenth Amendment against the KCDCFS Defendants. The right to familial relations is "a component of 'substantive

due process.'" *Doe*, 327 F.3d at 517 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) and citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000) and *Brokaw v. Mercer County*, 235 F.3d 1000, 1018 (7th Cir. 2000)). "The right to familial relations is not, however, absolute . . . . The liberty interest in familial privacy and integrity is 'limited by the compelling governmental interest in the protection of children particularly where the children need to be protected from their own parents.'" *Id.* at 520 (citing *Berman v. Young*, 291 F.3d 976, 983 (7th Cir. 2002) and quoting *Brokaw*, 235 F.3d at 1019). Thus, courts must "weigh[] these competing interests," considering "(1) the nature of the privacy interest upon which the action taken by the State intrudes; (2) the character of the intrusion that is complained of; (3) the nature and immediacy of the governmental concern at issue; and (4) the efficacy of the means employed by the government for meeting this concern." *Id.* (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654–60 (1995) and *Joy v. Penn-Harris-Madison Sch. Corp.*, 212 F.3d 1052, 1058–59 (7th Cir. 2000)).

At the screening stage, by pleading an intrusion by the KCDCFS Defendants into his familial relation with T.W. that targeted Plaintiff, Plaintiff has stated a substantive due process claim. *Id.* Plaintiff has also pleaded that the deprivation took place without due process of law, which states a procedural due process claim. *Id.* at 526 ("A procedural due process claim involves a two-step inquiry: (1) whether the defendants deprived the plaintiffs of a constitutionally protected liberty or property interest; and (2) if so, whether that deprivation occurred without due process of law.") (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) and *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 616 (7th Cir. 2002)). Plaintiff has properly implicated

*Monell* as to KCDCFS and Kenosha City and County[7] by alleging maintenance of a policy or practice of permitting unconstitutional intrusions into familial relations without due process of law, or deliberate indifference to the same, and he has properly pleaded supervisory liability and/or failure to intervene as to Rogers.[8] To the extent that Plaintiff pleads a separate component of his procedural due process claim, including under *Monell* and supervisory theories of liability, against the KCDCFS Defendants based on the insufficiency of their grievance procedure, that claim also proceeds, and would appear to proceed independent of the effect of *Rooker-Feldman* or *Younger* or the domestic-relations exception. ECF No. 9 at 22 ("There exists no suitable grievance procedure . . . in Kenosha County.").

Similarly, based on the well-pleaded allegations in the amended complaint, the Court no longer has concerns regarding the implications of *Younger*, *Rooker-Feldman*, or the domestic-relations exception as to the DCF Defendants. The claims against the DCF Defendants relate entirely to the DCF grievance procedure, not the state court CHIPS or placement proceedings. Thus, for the same reasons that he states a procedural due process claim against the KCDCFS Defendants, Plaintiff states a procedural

---

[7] Plaintiff names all of the individual defendants in both their individual and official capacities, ECF No. 9 at 2–6, but "[c]laims against municipal officials in their official capacities are really claims against the municipality and are 'redundant when the municipality is also named as a defendant.'" *Castro v. Dart*, 483 F. Supp. 3d 564, 577 (N.D. Ill. 2020) (citing *Union Pac. R.R. Co. v. Village of S. Barrington*, 958 F. Supp. 1285, 1291 (N.D. Ill. 1997)). Thus, the Court omits the individual defendants in their official capacities from its summary of the *Monell* claims.

[8] When applied to supervisors, failure to intervene "becomes a subset" of supervisory liability. *Reardon v. Schossow*, 416 F. Supp. 3d 793, 807 (E.D. Wis. 2019) (citing *Odogba v. Wis. Dep't of Justice*, 22 F. Supp. 3d 895, 909 (E.D. Wis. 2014)).

due process claim against Amundsun and Jansen and implicates *Monell* based on the same as to DCF. Again, the right to familial relations is a protected liberty interest, *see Doe*, 327 F.3d at 517, and Plaintiff asserts both that the DCF Defendants did not afford him due process of law with their grievance procedure and that they have a policy or practice of doing so, or of exhibiting deliberate indifference to the same. However, Plaintiff has not stated a substantive due process claim against the DCF Defendants because he has not pleaded an intrusion by the DCF Defendants into his familial relation with T.W. *Id.*

Plaintiff may also proceed on a class-based equal protection claim under the Fourteenth Amendment against Brereton based on his contentions that Brereton used his alleged homelessness to treat him less favorably during the state court proceedings. "To state a class-based equal protection claim, a plaintiff must plead that he or she was discriminated against based on membership in a definable class, and that the state actor acted with a 'nefarious discriminatory purpose.'" *Pinkston v. Bd. of Educ. of City of Chicago*, No. 19 CV 6477, 2023 WL 6392302, at *4 (N.D. Ill. Oct. 2, 2023) (quoting *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015)). The level of review applicable to Plaintiff's proffered class is a matter to be determined another day. For now, it suffices to say that he has stated the claim.

As earlier noted, in addition to Fourteenth Amendment claims, Plaintiff also pursues claims under the Fourth, Thirteenth, and First Amendments. The Court takes up each in turn. First, Plaintiff may not proceed on a Fourth Amendment claim because that claim would belong to T.W., upon whose behalf Plaintiff may not appear pro se. The Seventh Circuit has held with respect to similar allegations that the removed child

could bring a Fourth Amendment claim "because it is premised on his seizure." *Hernandez*, 657 F.3d at 474. However, a parent's claim "premised on [a child's] . . . removal" is "properly analyzed under substantive due process" rather than the Fourth Amendment. *Id.* Next, Plaintiff may not proceed on a Thirteenth Amendment claim because he has not alleged any form of slavery or involuntary servitude. *See Walker v. City of Aurora*, No. 22-CV-2857, 2024 WL 1404381, at *6–7 (N.D. Ill. Feb. 20, 2024) (citing U.S. Const. amend. XIII).

Nor may Plaintiff proceed on a First Amendment claim as premised on familial association, as the First Amendment protects "expressive association" rather than "intimate association." *Milchtein*, 42 F.4th at 822 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984)). A claim regarding the "custody and care of [a parent's child] [is] better understood under the rubric of substantive due process" rather than the First Amendment. *Id.* (citing *Sebesta v. Davis*, 878 F.3d 226, 232–33 (7th Cir. 2017)).

However, Plaintiff has plausibly pleaded a First Amendment retaliation claim against Brereton, including a supervisory theory of liability and/or a failure to intervene theory of liability based on the same as to Rogers. "[F]or retaliation of First Amendment right claims under 42 U.S.C. § 1983, a plaintiff must show that (1) []he engaged in constitutionally protected speech; (2) the defendants, as public officials, engaged in adverse conduct against h[im]; and (3) the defendants were motivated, at least in part, by h[is] protected speech." *Bach v. Milwaukee Cnty. Cir. Ct.*, No. 13-CV-370, 2013 WL 4876303, at *5 (E.D. Wis. Sept. 11, 2013), *aff'd*, 565 F. App'x 531 (7th Cir. 2014) (citing *Bivens v. Trent*, 591 F.3d 555, 559 (7th Cir. 2010)). Plaintiff pleads that he submitted complaints about Brereton's discriminatory use of his alleged homelessness in the state proceedings

using the DCF grievance procedure and that, because of those complaints, Brereton retaliated against him by, among other things, requesting more restrictive conditions for him and submitting false information to the court. He pleads that Brereton's retaliation was known by "supervisory officials." ECF No. 9 at 16. He has thus stated a First Amendment retaliation claim against her, and the Court gleans a supervisory theory of liability and/or a failure to intervene theory of liability against Rogers, the named supervisor defendant.

Based on the Court's review of these analogous Seventh Circuit cases, the Court discerns no other viable claims from Plaintiff's well-pleaded allegations.

Finally, while Plaintiff attempts to implicate the State through Title VI, his proffered protected class—homelessness—is not protected under Title VI, and so the State's sovereign immunity is not abrogated. ECF No. 9 at 6–7 (arguing that the State's Eleventh Amendment immunity is abrogated because Plaintiff sues under Title VI); *id.* at 16 (listing homelessness as protected class); 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."). The Court deduces no covered protected class from Plaintiff's amended complaint. Thus, the Court will dismiss the State as a defendant without prejudice. Parenthetically, to the extent that DCF is an arm of the State, the issue of state sovereign immunity may yet arise anew as to the constitutional claims once the DCF Defendants appear in this suit.

## 4.    CONCLUSION

For the reasons stated herein, the Court grants Plaintiff's motion to proceed in forma pauperis. ECF No. 3. Plaintiff may proceed on certain claims in his amended complaint, as construed by the Court in this Order. Those claims are:

- A Fourteenth Amendment substantive due process claim against the KCDCFS Defendants, including (1) a *Monell* theory of liability based on the same and (2) a supervisory liability theory and/or a failure to intervene theory of liability based on the same against Rogers.

- A Fourteenth Amendment procedural due process claim against the KCDCFS Defendants, including (1) a *Monell* theory of liability based on the same and (2) a supervisory liability theory and/or a failure to intervene theory of liability based on the same against Rogers.

- A Fourteenth Amendment procedural due process claim and a *Monell* theory of liability based on the same against the DCF Defendants.

- A Fourteenth Amendment equal protection claim against Brereton.

- A First Amendment retaliation claim against Brereton, including a supervisory theory of liability and/or a failure to intervene theory of liability based on the same against Rogers.

The Court will dismiss the State as a defendant from this action without prejudice.

Plaintiff's next step in this matter is to serve his complaint together with summonses on the KCDCFS and the DCF Defendants. *See generally* Fed. R. Civ. P. 4. Plaintiff may either request service on the KCDCFS and the DCF Defendants by the U.S. Marshals or obtain service on the KCDCFS

and the DCF Defendants on his own, using one of the methods described in Federal Rule of Civil Procedure 4(d)–(e).

If Plaintiff chooses to obtain service on the KCDCFS and the DCF Defendants on his own, he should simultaneously file a request for the Clerk of the Court to issue service packets to him. There is no cost for the Clerk of Court to issue service packets to Plaintiff. If Plaintiff hires a process server to serve the KCDCFS and the DCF Defendants, he will be responsible for that cost.

Alternatively, "at the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3). Congress requires the U.S. Marshals Service to charge a fee for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for service by mail is $8.00 per item mailed; for process served personally by the U.S. Marshals Service, the fee is $65.00 per hour. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Congress has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service.

Plaintiff must file a notice on or before **June 19, 2024**, indicating whether he will obtain service on the KCDCFS and the DCF Defendants on his own or if he desires service by the U.S. Marshals Service.

**The Court warns Plaintiff that if he fails to comply with this or any of the Court's orders, his case will be dismissed without further notice for failure to prosecute.**

Accordingly,

**IT IS ORDERED** that Plaintiff David Weston's motion to proceed in forma pauperis, ECF No. 3, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the State of Wisconsin be and the same is hereby **DISMISSED without prejudice** as a defendant in this action; and

**IT IS FURTHER ORDERED** that, on or before **June 19, 2024**, Plaintiff David Weston  shall file a notice indicating whether he will obtain service on Defendants Emilie Amundsun, John Jansen, Ron Rogers, Brock Roberts, Pamela Condos, Michelle Lang, Alesha Brereton, Emily Gilbert, Alicia Shannon, the Wisconsin Department of Children and Families, the Kenosha County Division of Children and Family Services, and the County and therein the City of Kenosha, on his own or if he desires service by the U.S. Marshals Service.

Dated at Milwaukee, Wisconsin, this 5th day of June, 2024.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

Plaintiff will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.